**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

MAUREEN T. BAXTER,

        Plaintiff,

vs.

BRIAR CLIFF COLLEGE GROUP
INSURANCE PLAN; BRIAR CLIFF
COLLEGE n/k/a BRIAR CLIFF
UNIVERSITY; CONTINENTAL
CASUALTY COMPANY (CNA); and
THE HARTFORD,

        Defendants.

No. C 05-4016-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE
PARTIES' CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

————————————

**TABLE OF CONTENTS**

I. *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B. *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   A. *The Motion To Strike* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 11
      *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   B. *The Cross-motions For Summary Judgment* . . . . . . . . . . . . . . . . . . 14
      *1. Standards for summary judgment* . . . . . . . . . . . . . . . . . 14
      *2. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 16
      *3. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
         *a. Reduction of benefits* . . . . . . . . . . . . . . . . . . . . 21
            *i. Standard of review* . . . . . . . . . . . . . . . . . 21
            *ii. Did the Insurer abuse its discretion?* . . . . . . . . 25
         *b. Failure to provide plan documents* . . . . . . . . . . . . . . 31

III. *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

This litigation pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, arises from a reduction in the plaintiff's benefits under a long-term disability benefits plan. On the parties' cross-motions for summary judgment, the key issue is whether the insurer of the ERISA plan properly reduced the plaintiff's benefits under the plan by the amount of estimated Social Security disability benefits to which the insurer contends that the plaintiff has a "right," even though the plaintiff has not been awarded, or even applied for, such Social Security disability benefits. The plan, the plan administrator, and the insurer all assert that, as a matter of law, the insurer reasonably interpreted the plan to authorize, indeed to require, the insurer to make the challenged reduction in the plaintiff's benefits. The plaintiff, on the other hand, asserts that, as a matter of law, the defendants' reduction of her benefits is a breach of the plan provisions and/or is based on an arbitrary and unreasonable interpretation of the plan. A second issue on cross-motions for summary judgment is whether or not the plaintiff was timely provided with copies of all plan documents upon her request as required by ERISA and pertinent regulations. The court must decide whether the issues presented are appropriate for summary disposition.

## I. INTRODUCTION

### A. Factual Background

The court will not attempt here a detailed dissertation of the undisputed and disputed facts in this case. Rather, the court will present sufficient of the facts, undisputed and

disputed, to put in context the parties' arguments in support of their cross-motions for summary judgment.

The parties agree that, for approximately thirteen years, plaintiff Maureen Baxter was the vice president of finance for defendant Briar Cliff College, now known as Briar Cliff University (Briar Cliff). Baxter was a participant in the Briar Cliff College Group Insurance Plan (the Plan). The Plan is funded by an insurance policy from defendant Continental Casualty Insurance Company (CNA) and CNA's successor, defendant The Hartford. Complaint, Exhibit 1; Insurer's Appendix, 1-16. CNA and The Hartford will be referred to individually and collectively herein as "the Insurer." The Summary Plan Description, captioned as such in a document entitled "Your Rights Under ERISA," states that Briar Cliff is the Administrator of the Plan and that "[t]he Plan is administered by the Plan Administrator through an insurance contract purchased from [the Insurer]." Baxter's Appendix, Exhibit 2. The Summary Plan Description also states, "The Administrator and other Plan fiduciaries have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to benefits in accordance with the Plan." *Id.* Baxter points out that the Summary Plan Description also states that it "does not constitute part of the Plan or of any insurance policy issued in connection with the Plan." *Id.*

Baxter required a pancreas transplant in February 1999. She initially received disability benefits under the Plan for a post-surgery recovery period. Although Baxter attempted to return to work full-time in June 1999, she was unable to do so successfully, owing to complications from the pancreas transplant and the effects of the drug regime she was under as a result of the transplant. Baxter ultimately resigned her position with Briar Cliff in November 1999. At that time, she began receiving long-term disability benefits under the Plan on the basis that she was "totally disabled" within the terms of the Plan.

Although the parties do not now dispute that Baxter has remained "totally disabled" within the terms of the Plan, the Insurer terminated her benefits for a few months in 2000 on the ground that the Insurer's review of medical records showed that Baxter could perform "sedentary" work. After Baxter pursued an administrative appeal, the Insurer reversed its denial of benefits, reinstated Baxter to full benefits, and paid back benefits.

Subsequently, however, the Insurers sought to reduce Baxter's disability benefits pursuant to a term of the Plan, found in Addendum 2, which states the following:

> (2)    The Monthly Benefit under this policy shall be reduced by:
> 1.    Disability benefits paid, payable, or for which there is a right under:
> a.    The Social Security Act, excluding any amounts for which the Insured Employee's dependents may qualify because of the Insured Employee's Disability[.]

Insurer's Appendix (Administrative Record) (filed under seal) at 15. The Plan does not define "benefits paid," "benefits . . . payable," or "benefits . . . for which there is a right under . . . [t]he Social Security Act," and Baxter contends that these terms are ambiguous. Beginning in 2001, the Insurer began making inquiries to Baxter and her attorney as to whether or not Baxter had applied for Social Security disability benefits and offered to assist Baxter in making such an application, at no cost to Baxter, if she had not done so. Although the Insurer acknowledged that Baxter could not be compelled to apply for Social Security disability benefits, the Insurer repeatedly referred Baxter and her attorney to the provision quoted above, asserting that the provision authorized a reduction of Plan benefits for Social Security benefits paid, payable, or to which Baxter had a "right," whether or not Baxter applied for such benefits. Baxter has consistently declined

to apply for Social Security benefits.[1] She has also consistently asserted that the Plan does not require her to apply for Social Security benefits or permit the Insurer to punish her if she does not apply for such benefits by reducing her benefits under the Plan.

Matters came to a head in late 2004. After confirming with the Social Security Administration that Baxter had not applied for Social Security disability benefits, the Insurer sent Baxter's attorney a letter dated November 10, 2004, requesting that Baxter provide the Insurer, within the next thirty days, with information about whether or not Baxter had applied for Social Security disability benefits, and if so, the status of her claim. Insurer's Appendix at 71. The letter concluded with the following: "Please provide a copy of the application filed for Social Security Disability benefits on behalf of Maureen Baxter by 12/10/2004 to avoid a benefit reduction for a Social Security Estimate in the amount of $1,586.00 [per month]." *Id.* Baxter did not provide the requested information. Therefore, the Insurer reduced Baxter's monthly benefits by the amount indicated effective December 10, 2004.

By letter from her attorney dated November 23, 2004, Baxter pursued an administrative appeal of the reduction of her benefits, before that reduction took effect.

---

[1] Although it may not be material to the present dispute, Baxter's rather bewildering refusal to apply for Social Security disability benefits appears to be motivated by her distrust of the Insurer, after the unwarranted termination of her benefits under the Plan in 2000, and by her concern that if the Social Security Administration denies her claim for disability benefits, the Insurer will then assert that she is not disabled within the meaning of the Plan either, and once again terminate her benefits. However, there is not, at present, any dispute that Baxter is "totally disabled" within the meaning of the Plan and, absent a significant and unanticipated change in her condition, it does not appear likely that she will cease to be "totally disabled" within the meaning of the Plan, whatever the decision of the Social Security Administration on a claim for Social Security disability benefits, because the definitions under the Plan and the Social Security Act and regulations are not identical.

*Id.* at 69-70.  Baxter also sent letters dated December 5 and December 7, 2004, to Briar Cliff complaining about the anticipated reduction of her benefits.  *See id.* at 57-59, 61-62. By letter dated November 29, 2004, the Insurer's "Appeals Unit" notified Baxter's counsel of receipt of her appeal and informed Baxter as follows:

> The Appeals Unit will issue a ruling within 45 days of receipt of your appeal.  ERISA regulations allow the Appeals Unit an additional 45 days to reach a decision if necessary.  The Appeals Unit will notify you in writing if the additional time is required.

*Id.* at 68.  The Insurer subsequently denied Baxter's administrative appeal by letter to Baxter's counsel dated February 9, 2005.  *Id.* at 37-38, 51-52.  The letter was signed by Cheryl Sauerhoff, Appeal Team Leader, Appeals Team, for The Hartford.  The body of that letter, in its entirety, stated the following:

> Your disagreement of [sic] the Company's reduction of Ms. Baxter's Long Term Disability benefits has been forwarded to our department for review.  As you are aware, the Company gave notice on November 10, 2004 that Ms. Baxter's Long Term Disability benefits would be reduced by an estimated Social Security Disability award amount of $1,586.00 per month, unless she provides proof of filing for Social Security Disability by December 10, 2004.  To our knowledge, Ms. Baxter has not made any such application for Social Security Disability benefits; therefore, her monthly disability benefits are being reduced by the estimated Social Security Disability award effective December 10, 2004.
>
> You have indicated that this action is not supported by the policy language; however, you have been informed of the policy offsets on several prior occasions.  It is unclear as to why Ms. Baxter has not filed for Social Security Disability, given her physical and mental state resulting from her pancreas transplant of February 11, 1999.  Physical, psychological and

diagnostic findings does [sic] support that Ms. Baxter would not be able to perform the substantial and material duties of her regular occupation, and there are several references opining that she would not be able to perform any occupation, citing that she is completely and totally disabled. As Ms. Baxter has not been able to continue working beyond February 10, 1999 and her disability has certainly lasted longer than 12 continuous months, it would be expected that Ms. Baxter be entitled to receive Social Security Disability benefits.

On March 23, 2001, Ms. Baxter was provided a package of information from the Company, explaining her need to file for Social Security Disability benefits and a Social Security vender was offered to assist, which would not be of any cost to Ms. Baxter. On April 11, 2001, the Claims Team had addressed questions that you had posed in response to the Company's request for Ms. Baxter to make a Social Security Disability application, again citing the policy provision that was relied upon. While you may not agree with this provision, the policy clearly states: "(2) The Monthly Benefit under this policy shall be reduced by: 1. Disability benefits paid, payable, or for which there is a right under: a. The Social Security Act, . . .".

Given the facts as presented, it is our position that Ms. Baxter has a right to benefits under the Social Security Act and that she would be eligible to receive these benefits, which are benefits payable. Since Ms. Baxter has not made an application for Social Security Disability benefits, the Claims Team does have the right to reduce Ms. Baxter's monthly disability benefit by the estimated Social Security Disability award. Once Ms. Baxter has made her application for Social Security Disability benefits and complies with the filing requirements, she may choose to continue her full monthly benefit without the estimated award setoff, with the knowledge that her Long Term Disability benefits may be overpaid. Enclosed is a copy of the Request For Advance Of Disability

> Benefits And Reimbursement Of Overpayment Agreement Ms.
> Baxter acknowledged and signed on May 18, 1999.
>
> Should the Social Security Administration find that Ms. Baxter
> was not insured for Social Security benefits, or if her disability
> claim is denied through the Administrative Law Judge hearing
> level, then Ms. Baxter would not be required to continue to
> pursue Social Security Disability and this offset would no
> longer be applicable, again in accordance with "benefits paid,
> payable or for which there is a right under".
>
> We are also enclosing for your reference a copy of the
> Company's letter of April 11, 2001 and a copy of the policy.
> This completes our appeal review regarding your dispute of the
> Company's reduction of Ms. Baxter's monthly disability
> benefits.

*Id.* Prior to receiving this letter, Baxter filed suit in this federal court alleging that the defendants had improperly reduced her disability benefits under the Plan.

A second issue of concern in this litigation and on the parties' cross-motions for summary judgment is whether or not the defendants timely provided Baxter with all Plan documents upon her written request, as required by ERISA and pertinent regulations. Baxter requested copies of the Plan documents at various times in the course of the parties' disputes. Baxter does not dispute that the Insurer mailed her a copy of the underlying policy on approximately April 11, 2001, or that the Insurer had previously mailed her a copy of the underlying policy on approximately June 8, 2000, although she cannot confirm the precise dates the documents were mailed or received. Baxter also does not dispute that she received a copy of the Summary Plan Description from the Insurer and/or Briar Cliff at some point. However, Baxter contends that, because the Insurer has, from time to time, relied upon the Plan as authority for its actions, when she contends that the Plan provides no such authority, and has asserted that the Plan includes provisions regarding the time for

resolution of administrative appeals that she cannot find anywhere in the Plan documents that she has received, there must be other Plan documents that the defendants have not provided, despite her many requests.

## B. *Procedural Background*

Plaintiff Maureen Baxter filed suit on February 4, 2005, even before she received the Insurer's February 9, 2005, letter denying her administrative appeal of the reduction in her disability benefits under the Plan, but after the reduction had taken effect. In her Complaint, Baxter named as defendants Briar Cliff, the Plan, and the Insurer. In her Complaint, Baxter contends that the defendants' interpretation of the Plan to permit reduction of her disability benefits under the Plan by the amount of Social Security disability benefits to which the defendants estimate that she is entitled, whether or not she has applied for or is receiving Social Security disability benefits, and the defendants' actual reduction of her benefits on this basis are in breach of the Plan, arbitrary, and unreasonable. Baxter seeks lost benefits as well as declaratory judgment concerning her rights under the Plan. Baxter also contends that the defendants have failed to supply her with all Plan documents in a timely fashion when she requested them in writing, and she asks the court to impose appropriate statutory penalties for such a violation of ERISA. The Insurer filed an answer on March 25, 2005 (docket no. 6), denying Baxter's claims. Briar Cliff and the Plan filed a joint answer, also on March 25, 2005 (docket no. 7), also denying Baxter's claims.

On July 15, 2005, the Insurer filed a motion for summary judgment (docket no. 10) on both of Baxter's claims. In a motion filed July 22, 2005 (docket no. 13), Briar Cliff and the Plan joined in the Insurer's motion for summary judgment and also moved for summary judgment on the ground that Baxter has received all of the benefits to which she

is entitled and has also received copies of all Plan documents. Baxter resisted the Insurer's motion for summary judgment on August 1, 2005 (docket no. 14), but also asserted, in the alternative, that she required additional time to complete discovery before responding to the Insurer's motion. Baxter resisted the summary judgment motion by Briar Cliff and the Plan on August 3, 2005 (docket no. 17). On August 15, 2005, Briar Cliff and the Plan filed a reply in further support of their motion for summary judgment (docket no. 24). Also on August 15, 2005, the Insurer filed a motion to strike parts of Baxter's resistance (docket no. 25), and on August 16, 2005, filed a reply in further support of its motion for summary judgment (docket no. 28). Baxter resisted the motion to strike on August 17, 2005 (docket no. 29).

On August 19, 2005, the court denied Baxter's request for a continuance to complete discovery without prejudice to reassertion of such a motion in proper form pursuant to Rule 56(f) of the Federal Rules of Civil Procedure and N.D. IA. L.R. 56.1(g). *See* Order of August 19, 2005 (docket no. 30). Baxter chose not to file a proper Rule 56(f) motion; instead, on August 30, 2005, she filed her own cross-motion for summary judgment (docket no. 31). On September 29, 2005, the Insurer filed its resistance to Baxter's motion for summary judgment (docket no. 37), and that same day Briar Cliff and the Plan filed a joinder in the Insurer's resistance (docket no. 38).

No party has requested oral arguments on the motions for summary judgment in the manner required by N.D. IA. L.R. 56.1(f), and the court finds that oral arguments are not required. A bench trial in this matter is currently scheduled to begin on July 6, 2006.

## II.  LEGAL ANALYSIS

### A.  The Motion To Strike

Because the Insurer's August 15, 2005, Combined Motion To Strike (docket no. 25) relates to the documents that the court can properly consider on the parties' cross-motions for summary judgment, and indeed, the documents that the court can consider on judicial review of benefits determinations under ERISA, the court must consider that motion before considering the merits of the cross-motions for summary judgment.  In its motion, the Insurer contends that the court should strike the following:  (1) portions of Baxter's appendix that were not part of the Administrative Record before the Insurer at the time of its decision to reduce Baxter's disability benefits under the Plan;[2] (2) portions of Baxter's Appendix that represent compromise offers made by Baxter after this action was filed; (3) certain portions of Baxter's Resistance To [the Insurer's] Motion For Summary Judgment; (4) Baxter's Response To [The Insurer's] Statement Of Material Facts; and (5) Baxter's List Of Disputed Issues Of Material Facts.  As noted above, Baxter resisted this motion on August 17, 2005 (docket no. 29).

### 1.  Arguments of the parties

In support of its Combined Motion To Strike, the Insurer contends that the first four challenged portions of Baxter's response to its motion for summary judgment are improper for two reasons.  First, the Insurer contends that, because the Plan grants the Insurer the discretion to determine Baxter's eligibility for benefits and to construe the terms of the Plan, the review of the Insurer's determinations and constructions is only for abuse of discretion and is, furthermore, restricted to the record before the Insurer at the time that

---

[2]The Insurer identifies more specifically the challenged portions of the Appendix that must be stricken, because they were not part of the administrative record.  However, the court finds it unnecessary to list those portions more specifically here.

11

the decisions in question were made. Even if the standard of review in this case is less deferential, which the Insurer disputes, the Insurer contends that Baxter has shown no basis for expanding the administrative record. Finally, the Insurer contends that Baxter's Exhibit 20 represents settlement correspondence, such that it is inadmissible under Rule 408 of the Federal Rules of Evidence. The Insurer contends that Baxter's List of Disputed Issues Of Material Fact should be stricken, because it so completely fails to comply with the requirements for such a statement of disputed facts in N.D. IA. L.R. 56.1(b) that it is virtually impossible for the Insurer to frame a response in compliance with N.D. IA. L.R. 56.1(b).

In response, Baxter contends that nothing in the Plan gives the Insurer the discretion to determine eligibility or to construe terms, even if the Administrator, here Briar Cliff, is given such discretion. Thus, Baxter contends that review should not be merely for abuse of discretion, but should be less deferential, and may include documents from outside of the administrative record. Baxter also contends that, if Exhibit 20 contains extraneous matters, or matters that are inadmissible under Rule 408 of the Federal Rules of Civil Procedure, the court should disregard the exhibit to that extent. However, Baxter contends that Exhibit 20 also demonstrates her continuing quest for all plan documents and the Insurer's continuing refusal to provide all plan documents, and also demonstrates inconsistencies between documents provided and the Insurer's assertions regarding appeal rights. As to her statement of disputed facts, Baxter contends that she has substantially complied with N.D. IA. L.R. 56.1(b) and that, in any event, the Insurer knows precisely what facts are at issue. She contends that any difficulty that the Insurer is having in responding to her statement of disputed facts is the result of ambiguities in the Plan documents for which the Insurer and Briar Cliff are responsible.

## 2.    *Analysis*

The Insurer is correct that, when reduction or termination of a beneficiary's benefits under an ERISA plan is subject to review for abuse of discretion, the court's review is limited to the record before the Plan Administrator.  *See, e.g., Farfalla v. Mutual of Omaha Ins. Co.*, 324 F.3d 971, 974-75 (8th Cir. 2003); *Farley v. Arkansas Blue Cross and Blue Shield*, 147 F.3d 774, 777 (8th Cir. 1998); *Layes v. Mead Corp.*, 132 F.3d 1246, 1251 (8th Cir. 1998).  However, that rule merely begs the question of what standard of review is applicable here.  Nevertheless, because the court finds that consideration of the portions of Baxter's resistance to the Insurer's motion for summary judgment that the Insurer contends should be stricken will not change either the standard of review that the court applies or the court's disposition of the parties' cross-motions for summary judgment, there is no need to strike portions of Baxter's appendix that are not part of the administrative record.  Moreover, while a resistance to summary judgment, like a summary judgment motion itself, must be based on *admissible* evidence, *see, e.g.,* FED. R. CIV. P. 56(e) (affidavits in resistance to summary judgment must be based on admissible evidence); *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (inadmissible evidence cannot be used to defeat summary judgment), the court finds that it can simply disregard portions of any exhibit that are not admissible under Rule 408 or any other Rule of Evidence, which makes it unnecessary to strike Exhibit 20 from Baxter's appendix.

The court also agrees with the Insurer that Baxter's List of Disputed Issues Of Material Fact (docket no. 14-4) fails to comply with N.D. IA. L.R. 56.1(b).  That local rule states the following:

> Each individual statement of additional material fact must be concise, numbered separately, and supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions,

13

> exhibits, and affidavits that support the statement, with
> citations to the appendix containing that part of the record.

N.D. Iᴀ. L.R. 56.1(b) (unnumbered final paragraph). At the very least, Baxter's narrative and argumentative statements of various disputed facts are a far cry from "concise" and "separately numbered" factual statements. However, the court finds that, albeit with some difficulty, the court and the parties are reasonably able to determine the facts that Baxter contends are genuinely in dispute and the portions of the record that she believes support her view of the facts. For example, Baxter's responses to the Insurer's statements of fact and her own statements of fact in support of her own motion for summary judgment more clearly comply with the requirements of the local rule and, hence, more clearly delineate the factual issues, if any, that she believes remain in dispute. In circumstances where there were fewer indicators of the nature and basis for a party's alleged factual disputes, the court would more than likely strike statements of disputed fact that, like Baxter's, fail to comply with the requirements of the local rule. However, the court will not do so in this case, because it has no wish to elevate form over substance where the factual disputes, if any, are otherwise discernible.

Therefore, although the Insurer's motion to strike has considerable merit, the court will nevertheless deny that motion on the practical grounds stated, because such practical considerations make the Insurer's motion to strike moot.

## B. The Cross-motions For Summary Judgment

### 1. Standards for summary judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a prosecuting or defending party may move, at any time, for summary judgment in that party's favor "as to all or any part" of the claims at issue. Fᴇᴅ. R. Cɪᴠ. P. 56(a) (summary judgment for

claimant) & (b) (summary judgment for defending party). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As this court has explained on a number of occasions, applying the standards of Rule 56, the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Quick*, 90 F.3d at 1377 (same).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997), *cert. denied*, 523 U.S. 1040 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v.*

*Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.*, are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994).

Finally, "'[w]here the unresolved issues are primarily legal rather than factual,'" as the defendants contend is the case here, and as Baxter's cross-motion for summary judgment on the same issues also suggests, "'summary judgment is particularly appropriate.'" *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996) (quoting *Crain v. Board of Police Comm'rs*, 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

### 2.    *Arguments of the parties*

The court finds that the contentions of the parties in their cross-motions for summary judgment are essentially "mirror images," such that all of the motions, and all of the contentions, can be addressed together. Indeed, the Insurer, Briar Cliff, and the Plan stand primarily on their prior briefing of their own motions for summary judgment

as providing adequate responses to Baxter's cross-motion for summary judgment. Therefore, the court will begin with the arguments of the Insurers, Briar Cliff, and the Plan, as the first movants for summary judgment, then turn to Baxter's arguments.

The Insurer contends that it had, and did not abuse, discretion to determine eligibility for benefits under the Plan and to construe the terms of the Plan. "Abuse of discretion" review, the Insurer argues, requires a determination of whether its decision was "reasonable," which in turn, means that it was supported by "substantial evidence." "Substantial evidence," the Insurer explains, is more than a scintilla, but less than a preponderance. Ultimately, the Insurer contends, the question is whether a reasonable person *could* have reached a similar decision, based on the evidence, not whether a reasonable person *would* have reached that decision. Here, the Insurer argues that it has offered a reasonable explanation of its decision to reduce Baxter's monthly benefit pursuant to unambiguous policy language or policy language that it has reasonably construed as permitting such a reduction. Therefore, the Insurer contends that there is no basis to disturb its decision.

Somewhat more specifically, the Insurer contends that it reasonably determined, based on unambiguous Plan language, that Baxter's benefits under the Plan could be reduced by the amount of Social Security disability benefits to which she had a "right," whether or not she actually applied for such Social Security benefits. The Insurer also argues that its interpretation is consistent with the goals of the Plan, which is designed to provide replacement income to a person who is incapable of working due to disability, but as a supplement to any other benefit the beneficiary may be entitled to receive. The Insurer also contends that it reasonably determined, on the record evidence, that Baxter was disabled within the meaning of Social Security regulations, so that she had a "right" to Social Security disability benefits. Next, where, as here, the Plan expressly identifies

Social Security disability benefits paid, payable, or to which a beneficiary has a right as a basis for reduction of Plan benefits, the Insurer contends that it could not have abused its discretion by making such a reduction in Baxter's case. Moreover, the Insurer contends that it has interpreted the Plan provision at issue consistently for the last several years during which the parties' dispute has continued and that its interpretation does not conflict with ERISA's substantive or procedural requirements. In contrast, the Insurer contends that Baxter is asking the court to rewrite the Plan in a manner that would conflict with its terms and purpose and the purpose of ERISA to ensure the integrity and primacy of written plans.

As to Baxter's second claim, that she did not receive all Plan documents when she requested them, the Insurer contends that Briar Cliff, not the Insurer, is the Plan Administrator, so that Briar Cliff, not the Insurer, was required by ERISA, 29 U.S.C. § 1024(b)(4), to provide such documents when requested. Consequently, the Insurer contends that it cannot be liable for penalties for failure to provide the Plan documents. In any event, the Insurer contends that it did provide Baxter with all of the Plan documents, which consist only of the policy and the Summary Plan Description, when Baxter requested them, sometimes more than once. Finally, the Insurer contends that any penalty would be inappropriate, even if there was some technical non-compliance with ERISA's requirements, because it is clear that Baxter has, and has always had when needed, all of the Plan documents.

In support of their joinder in the Insurer's motion for summary judgment and in support of their own motion for summary judgment, Briar Cliff and the Plan add that Baxter clearly received the only Plan documents, the insurance policy and the Summary Plan Description, because she has attached them to her Complaint. Briar Cliff and the Plan also contend that, even if there was some technical noncompliance with the

requirements of ERISA, they relied in good faith on the Insurer to administer Baxter's claim and on their own reasonable belief that Baxter had the documents that she had requested, so that no penalty is appropriate.

In resistance to the defendants' motions for summary judgment, Baxter initially asserted that the following genuine issues of material fact preclude summary judgment: (1) whether the policy requires Baxter to apply for Social Security disability benefits; (2) whether the policy allows the Insurer, who is not named as a person with any discretion under the Plan, to punish her arbitrarily by reducing her benefits if she does not apply for Social Security disability benefits; (3) whether the Insurer is an "administrator" or "fiduciary" with discretion to determine eligibility for benefits or to construe the terms of the Plan, or whether the Insurer is a co-administrator who can only act jointly with Briar Cliff; (4) whether Baxter has any "right" to Social Security disability benefits, where that term of the Plan is ambiguous; (5) whether the Insurer's reduction in Baxter's benefits is arbitrary and unreasonable; (6) whether the Insurer has a perpetual conflict of interest requiring less deferential review of its eligibility determination and constructions; and (7) whether the defendants have supplied her with all Plan documents.

Subsequently, however, Baxter filed her own cross-motion for summary judgment asserting that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law on both of her claims of violation of ERISA. In support of her own motion, Baxter contends that there is no genuine issue of material fact that the party without discretion, the Insurer, acted to reduce her benefits, while the party with discretion, Briar Cliff, did nothing, so that the Insurer's actions are not entitled to any deference. She also contends that, as a matter of law, there is simply no portion of the Plan that requires her to apply for Social Security disability benefits or that permits the defendants to punish her by reducing her benefits under the Plan if she does not.

Therefore, Baxter contends that, as a matter of law, the reduction of her benefits was contrary to the terms of the Plan or based on an arbitrary interpretation of the Plan by a party with no discretion to make such an interpretation and a conflict of interest to boot.

In reply to Baxter's resistance to the defendants' motions for summary judgment and in response to Baxter's cross-motion for summary judgment, the Insurer argues that the applicable standard of review is clearly "abuse of discretion," because the Plan plainly gives the Insurer the discretion to construe and apply the Plan. The Insurer contends that Baxter has failed to identify any factual basis for a less deferential standard of review, because even if there is some conflict of interest in the Insurer's roles as decisionmaker and payor under the Plan, there is absolutely no basis to find that the conflict of interest affected the Insurer's decisions under the Plan, let alone caused a breach of the Insurer's fiduciary duty, when those decisions comport with the express and unambiguous terms of the Plan. The Insurer also argues that, under governing case law, including *Butts v. Continental Cas. Co.*, 357 F.3d 835, 838 (8th Cir. 2004), it is not necessary for the Plan to spell out who has discretion, other than to specify that those charged with implementing the Plan will have such discretion. Here, the Insurer argues that essentially the same language is at issue as was at issue in *Butts*, and the Plan, thus, clearly granted Briar Cliff, as the Administrator, and the Insurer, as a "Plan fiduciary," discretion to construe and apply the Plan. The Insurer also argues that Baxter's argument that the Plan does not require her to apply for Social Security disability benefits misses the point, because the Plan expressly provides that her benefits under the Plan shall be reduced by the amount of Social Security disability benefits to which she has a right, making her actual application for such Social Security benefits irrelevant. Next, the Insurer contends that there is no genuine issue of material fact as to the reasonableness of the reduction in Baxter's disability benefits under the Plan, because Baxter has offered no contrary calculation of

the amount of Social Security disability benefits to which she is entitled. Finally, the Insurer reiterates that Baxter has received all of the Plan documents, whether the Insurer or Briar Cliff had the responsibility to provide those Plan documents to her.

### 3. *Analysis*

#### a. *Reduction of benefits*

**i.** *Standard of review*. Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that "a participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Thus, "'ERISA provides a plan beneficiary with the right to judicial review of a benefits determination.'" *Norris v. Citibank, N.A., Disability Plan*, 308 F.3d 880, 883 (8th Cir. 2002) (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998), and citing 29 U.S.C. § 1132(a)(1)(B)); *Jackson v. Metropolitan Life Ins. Co.*, 303 F.3d 884, 887 (8th Cir. 2002) (*citing Donaho v. FMC Corp.*, 74 F.3d 894, 898 (8th Cir. 1996)); *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 642 (8th Cir. 2002) (also quoting *Woo* ); *Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 840 (8th Cir. 2001), *cert. denied*, 532 U.S. 1162 (2002). Although beneficiaries are entitled under ERISA to judicial review of an administrator's denial of benefits, where the plan gives the administrator discretionary authority to determine eligibility for benefits, courts ordinarily review the administrator's decision only for an "abuse of discretion." *See id.* (again citing *Woo*); *see also Ortlieb v. United HealthCare Choice Plans*, 387 F.3d 778, 781 (8th Cir. 2004); *Shelton*, 285 F.3d at 642 (also citing *Woo* ); *Clapp v. Citibank, N.A., Disability Plan (501)*, 262 F.3d 820, 826 (8th Cir. 2001); *Marshall*, 258 F.3d at 840. "'This deferential standard reflects [the courts'] general hesitancy to interfere with the administration of a benefits plan.'" *Id.* (quoting *Layes v.*

*Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)). A less-deferential standard of review is applicable, however, either when the plan in question does not grant discretion, *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110-15, (1989); *Davidson v. Prudential Ins. Co. of Am.*, 953 F.2d 1093, 1095 (8th Cir. 1992); *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 153-54 (8th Cir. 1990), *cert. denied*, 501 U.S. 1238 (1991), or when the administrator has a "conflict of interest" or the record reveals "serious procedural irregularities." *Heaser v. Toro Company*, 247 F.3d 826, 833 (8th Cir. 2001). To establish that less-deferential review is appropriate, the claimant must satisfy a two-step process: The court must first decide whether the claimant has presented "'material, probative evidence demonstrating that . . . a palpable conflict of interest or a serious procedural irregularity existed,'" then determine whether that conflict or irregularity "'caused a serious breach of the plan administrator's fiduciary duty to her.'" *Id.* (quoting *Woo*, 144 F.3d at 1160).

Here, the Summary Plan Description includes an express statement that "The Administrator and other Plan fiduciaries have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to benefits in accordance with the Plan." Baxter's Appendix, Exhibit 2. While Baxter contends that this language does not specifically identify the Insurer as a party with such discretion, that argument is foreclosed, as the Insurer contends, by *Butts v. Continental Cas. Co.*, 357 F.3d 835 (8th Cir. 2004). In *Butts*, the court explained,

> The plan need not spell out in intricate detail who has the discretion, other than to specify that those charged with implementing it will have such discretion. Continental's plan language is nearly identical to that discussed by the [Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)]—the only difference is that Continental's plan has the word "and" instead of "or" between "Administrator" and

> "other Plan fiduciaries." That distinction is not material. The purpose of Continental's plan language can only be to give deference to eligibility determinations and to give those in charge of the plan the power to construe uncertain terms. *Bruch*, 489 U.S. at 111, 109 S. Ct. 948. Thus, the plan contains a sufficiently clear delegation of discretion, and we therefore apply the abuse of discretion standard of review. *See, e.g., Shipley v. Arkansas Blue Cross and Blue Shield*, 333 F.3d 898, 901 n. 4 (8th Cir. 2003) (holding that the plan language, the "Company acting on behalf of the Plan shall have authority and full discretion to determine all questions arising in connection with the Employee's insurance benefits" was sufficient to invest a "plan administrator" with abuse of discretion authority) (internal quotations omitted).

*Butts*, 357 F.3d at 838 (footnote omitted). Here, the discretion-granting language in the Summary Plan Description is *the same* as the language found to be sufficient in *Butts*. Moreover, the Insurer is plainly a party to whom the discretion-granting language applies, because the Insurer is plainly a "Plan fiduciary," just as the insurance company in *Butts* was plainly a "Plan fiduciary," because the Insurer was acting on behalf of the Plan and the Plan Administrator. *See also* Baxter's Appendix, Exhibit 2 (the Summary Plan Description also provides that "[t]he Plan is administered by the Plan Administrator through an insurance contract purchased from [the Insurer]").

Baxter, however, asserts that the Summary Plan Description cannot be the necessary grant of discretion by the Plan, because the Summary Plan Description states that the Summary Plan Description "does not constitute a part of the Plan or of any insurance policy issued in connection with the Plan." *Id.* Notwithstanding this language, however, the court finds that, as a matter of law, the Summary Plan Description is part of the ERISA plan documents. *See Jensen v. SIPCO, Inc.*, 38 F.3d 945, 949 (8th Cir. 1994) ("[Summary Plan descriptions] are part of the ERISA plan documents."). Indeed, in this

case, as in *Ross v. Rail Car Am. Group Disability Income Plan*, 285 F.3d 735 (8th Cir. 2002), "the policy and the Summary Plan Description jointly constitute the Plan documents." *Ross*, 285 F.3d at 739. As in *Ross*, "[t]he policy is a standard contract of insurance setting forth eligibility requirements, benefit payments, and similar information," but "contains no mention of ERISA or its requirements." *Id.* On the other hand, the Summary Plan Description "sets forth important information about the Plan, as required by ERISA, including the Plan's name, the name and address of the policyholder, identification of the type of plan and type of administration, and a statement of a participant's ERISA rights." *Id.* (citing 29 U.S.C. § 1022 (Supp. V 1999) and 29 C.F.R. § 2520.102-3 (2000) as setting forth required contents of summary plan descriptions). The Summary Plan Description in this case also notifies participants that the Insurer was responsible for acting on the Plan Administrator's behalf, because it states, "The Plan is administered by the Plan Administrator through an insurance contract purchased from [the Insurer]." Baxter's Appendix, Exhibit 2 (Summary Plan Description), *and compare Ross*, 285 F.3d at 739 ("The Summary Plan Description also notified participants that Canada Life was responsible for the administration of claims, including the handling and processing of claims forwarded to it by Rail Car."). Thus, there is an express grant of discretion to the Administrator *and to the Insurer* to interpret the terms of the Plan and to determine eligibility and entitlement to benefits, so that only "abuse of discretion" review is appropriate. *Ortlieb*, 387 F.3d at 781; *Norris*, 308 F.3d at 883.

Baxter also asserts that less deferential review is appropriate, because the Insurer has a "conflict of interest." *See Heaser*, 247 F.3d at 833. However, even conceding, for the sake of argument, that the Insurer's position as both decisionmaker and payor constitutes a "palpable conflict of interest," *see id.* (first requirement for less deferential review); *see also Torres v. UNUM Life Ins. Co. of Am.*, 405 F.3d 670, 678 (8th Cir. 2005)

(the court has held that serving as both insurer and administrator of a long-term disability plan is a "palpable conflict of interest") (citing cases), Baxter has neither established as a matter of law nor generated a genuine issue of material fact that the supposed conflict "'caused a serious breach of the plan administrator's fiduciary duty to her.'" *Id.* (second requirement) (quoting *Woo*, 144 F.3d at 1160); *see also Torres*, 405 F.3d at 679 (even where there was a "palpable conflict of interest," because the insurer acted as administrator, the beneficiary could not show that the conflict caused a breach of fiduciary duty). Specifically, Baxter offers nothing but speculation that the Insurer reduced her benefits because it was financially advantageous for the Insurer to do so, rather than because the Insurer believed that the policy specified, in mandatory terms, that such a reduction was required. *Cf. Torres*, 405 F.3d at 679 ("Torres presented no evidence that UNUM denied his claim because it was financially advantageous for it to do so. Accordingly, he has not shown that UNUM's financial conflict of interest had a sufficient connection to the decision reached to trigger a departure from the abuse of discretion standard."). Thus, the asserted "conflict of interest" does not warrant imposition of less deferential review in this case.

  *ii.*   ***Did the Insurer abuse its discretion?***   Because deferential "abuse of discretion" review is appropriate here, the next question is whether the Insurer abused its discretion. Here, the Insurer's determination to reduce Baxter's disability benefits under the Plan involves both a factual determination, specifically, that Baxter was eligible for Social Security disability benefits, and a legal determination by the Insurer concerning interpretation of Plan terms as requiring a reduction under such circumstances. Under the circumstances, and under the "abuse of discretion" standard of review, the court must "consider whether the [Insurer] adopted a 'reasonable interpretation' of uncertain terms in the plan, and whether the [Insurer's] decision was supported by substantial evidence,

*i.e.*, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunt v. Metropolitan Life Ins. Co.*, 425 F.3d 489, 490 (8th Cir. 2005) (quoting *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (*en banc*), with internal quotations omitted).

As to the first step in the review process, "[a] plan administrator's interpretation of a plan does not constitute an abuse of discretion so long as it is '"reasonable," even if the reviewing court disagrees with the interpretation.'" *Johnson v. U.S. Bancorp Broad-Based Change In Control Severance Pay Program*, 424 F.3d 734, 738 (8th Cir. 2005) (quoting *Neumann v. AT & T Communications, Inc.*, 376 F.3d 773, 781 (8th Cir. 2004)). As the Eighth Circuit Court of Appeals recently explained,

> In an effort to give content to the requirement of "reasonable" interpretation by plan administrators, our court has catalogued several factors to be considered in the analysis. These include "whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan." *Finley v. Special Agents Mut. Benefit Assoc., Inc.*, 957 F.2d 617, 621 (8th Cir. 1992) (citing *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir. 1989)). These so-called "*Finley* factors" inform our analysis, but "[t]he dispositive principle remains . . . that where plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination." *de Nobel*, 885 F.2d at 1188 (alteration in original) (internal quotes omitted).

*King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005). Applying the so-called *"Finley* factors" here, it is apparent that the Insurer's construction of the challenged term is "reasonable."

First, however, the court must review the policy term on which the Insurer relies and the Insurer's interpretation of that policy term. The term in question states the following, in pertinent part:

> (2) The Monthly Benefit under this policy shall be reduced by:
> 1. Disability benefits paid, payable, or for which there is a right under:
>    a. The Social Security Act, excluding any amounts for which the Insured Employee's dependents may qualify because of the Insured Employee's Disability[.]

Insurer's Appendix (Administrative Record) (filed under seal) at 15. Baxter contends that the Insurer has interpreted this provision to *require* her to apply for Social Security disability benefits and to punish her if she does not do so by reducing her disability benefits under the Plan. However, that is not the interpretation that the Insurer actually asserts. Rather, the Insurer has conceded that this Plan language *does not* require Baxter to apply for Social Security disability benefits; rather, the Insurer's interpretation is that the provision permits—indeed, requires—the Insurer to reduce a beneficiary's disability benefits under the Plan by the amount of Social Security disability benefits that the beneficiary has "a right" to receive under the Social Security Act, *i.e.*, any such benefits for which the beneficiary is "eligible," *whether or not the beneficiary applies for Social Security disability benefits*. Thus, under the Insurer's interpretation, whether or not the beneficiary actually applies for Social Security disability benefits is simply irrelevant.

There is no question of an interpretation that "forces" the beneficiary to do anything or that "punishes" a beneficiary who does not do something, even if a beneficiary necessarily has an interest under the Insurer's construction of the Plan terms in applying for Social Security disability benefits—and may even feel compelled to apply for such benefits—in order to maintain the desired level of disability benefits.

Turning to the "*Finley* factors," it is apparent that the Insurer's interpretation is consistent with the goals of the Plan. *See King*, 414 F.3d at 999 (first "*Finley* factor"). The underlying policy contains the Insurer's promise to pay benefits "for loss covered by this policy in accordance with its provisions." *See* Insurer's Appendix (Administrative Record) at 1. One of the provisions is the "reductions" provision in Addendum 2, of which the reduction for Social Security disability benefits is a part. *Id.* at 15. The "reductions" provision shows that the Plan is intended to provide benefits *as a supplement* to benefits to which a beneficiary may otherwise be entitled, and that is all that the Insurer's interpretation of the language in question does. Second, the Insurer's interpretation does not render any language of the Plan meaningless or internally inconsistent. *See King*, 414 F.3d at 999 (second "*Finley* factor"). Instead, reading "payable, or for which there is a right under . . . [t]he Social Security Act" to mean "eligible" for benefits under the Social Security Act, whether or not the beneficiary has actually applied for or is receiving such benefits, reasonably gives force and effect to these categories of Social Security disability benefits for which a reduction in Plan benefits is required. On the other hand, Baxter's reading of the term at issue as requiring her to be receiving Social Security disability benefits before the reduction is triggered renders meaningless at least the last category of Social Security disability benefits, those for which there is "a right," and makes the "payable" category vague if not meaningless, while it enforces only the "paid" category. Next, Baxter has failed to identify any way in which

the Insurer's interpretation conflicts with the substantive or procedural requirements of the ERISA statute, *see King*, 414 F.3d at 999 (third "*Finley* factor"), because ERISA does not require payment of benefits without limitation or contrary to the terms of the underlying policy. Similarly, there is no evidence that the Insurer has interpreted the words at issue in a different way in other cases, while there is copious evidence that the Insurer has consistently asserted the present interpretation in *this* dispute for the last several years. *Id.* (fourth "*Finley* factor"). Finally, and perhaps most plainly, the Insurer's interpretation is *not* contrary to the clear language of the Plan. *Id.* (fifth "*Finley* factor"). Indeed, were the court permitted or required to undertake *de novo* review of the Insurer's interpretation, the court would arrive at essentially the Insurer's interpretation of the provision as requiring a reduction of benefits under the Plan for Social Security disability benefits for which a beneficiary is eligible, whether or not the beneficiary has actually applied for or receives such Social Security disability benefits. Thus, all of the "*Finley* factors" weigh in favor of the "reasonableness" of the Insurer's interpretation of the disputed provision of the Plan.

Ultimately, while the "*Finley* factors are informative, "[t]he dispositive principle remains . . . that where plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination." *Id.* (quoting *de Nobel*, 885 F.2d at 1188. The court is presented with such a "reasonable interpretation" here, so that it would be inappropriate to submit one of its own, even if the court were inclined to offer one. Thus, the Insurer (and consequently Briar Cliff) is entitled to summary judgment on the "interpretation" step of the analysis. *Hunt*, 425 F.3d at 490 (whether the interpretation is "reasonable" is the first step of the "abuse of discretion" review of a reduction or denial of benefits).

The second step, consideration of "whether the [Insurer's] decision was supported by substantial evidence, *i.e.*, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *id.* (quoting *King*, 414 F.3d at 999), can be comparatively brief. The court finds that, as a matter of law, there was relevant evidence that a reasonable mind might accept as adequate to support the Insurer's conclusion that Baxter was eligible for Social Security disability benefits. As the Insurer points out, a person is "disabled" under the Social Security Act (and entitled to Social Security disability income) if the person is unable to do "any substantial gainful activity by reason of any medically determinable physical or mental impairment" which can be expected to last for a continuous period of not less than twelve (12) months. 20 C.F.R. §404.1505. Thus, the claimant must have a severe impairment that makes her unable to do past relevant work or any other substantial gainful work that exists in the national economy. 20 C.F.R. §404.1505. Here, the Insurer reasonably determined that Baxter was "disabled" within the meaning of the Social Security Act, because, as stated in the Insurer's denial of Baxter's administrative appeal, "[p]hysical, psychological and diagnostic findings does [sic] support that Ms. Baxter would not be able to perform the substantial and material duties of her regular occupation, and there are several references opining that she would not be able to perform any occupation," and Baxter had already been disabled for more than twelve months. Insurer's Appendix (Administrative Record) at 37.

Although the court is not convinced that Baxter's pleadings put the matter plainly at issue, the court also finds that the Insurer reasonably determined the *amount* of the appropriate reduction for estimated Social Security disability benefits. Certainly, Baxter has failed to point to any evidence, such as benefits calculations pursuant to Social Security Administration formulae, that demonstrate that the Insurer's calculation of the estimated Social Security disability benefits for which she is eligible was flawed. *See* FED. R. CIV.

P. 56(e) (the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial," and if the party fails to do so, then the moving party is entitled to summary judgment); *Celotex*, 477 U.S. at 324

In short, the Insurer both reasonably interpreted the provision in question to require a reduction of Baxter's benefits under the Plan by the amount of Social Security disability benefits for which she was eligible, whether or not she applied for Social Security disability benefits, and furthermore, reasonably found that Baxter was, indeed, eligible for such benefits; as a matter of law, there was no abuse of discretion here. *Hunt*, 425 F.3d at 490 (setting forth the two-step process to determine whether there has been an abuse of discretion). Therefore, the court will grant the Insurer's and Briar Cliff's motions for summary judgment on Baxter's claim that they unreasonably reduced her disability benefits under the Plan by the amount of Social Security disability benefits that the Insurer estimated Baxter was eligible to receive, regardless of whether or not Baxter had applied for or was receiving such benefits, and will also deny Baxter's cross-motion for summary judgment on the same claim.

### b. *Failure to provide plan documents*

Baxter's second claim is that the defendants failed to provide all Plan documents upon her request, so that she is entitled to civil penalties. A provision of ERISA requires the administrator to provide such documents upon written request, as follows:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is

established or operated. The administrator may make a
reasonable charge to cover the cost of furnishing such
complete copies. The Secretary may by regulation prescribe
the maximum amount which will constitute a reasonable charge
under the preceding sentence.

29 U.S.C. § 1024(b)(4). This obligation to provide Plan documents, and more
specifically, "other instruments under which the plan is established or operated," does not
mean "any document relating to a plan, but only formal documents that establish or govern
the plan." *Brown v. American Life Holdings, Inc.*, 190 F.3d 856, 861 (8th Cir. 1999).

Another provision of ERISA, 29 U.S.C. § 1132(c)(1), permits the court to impose
civil penalties for failure to provide documents as required by § 1024(b)(4). *See generally
Brown v. Aventis Pharms., Inc.*, 341 F.3d 822, 826-27 (8th Cir. 2003). The court's
decision to grant or deny such civil penalties is reviewed for abuse of discretion. *Id.* at
825; *see also Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 948 (8th Cir. 1999)
("Any penalty to be assessed is at the court's discretion."). The Eighth Circuit Court of
Appeals has explained that "the purpose of the penalty is to provide plan administrators
with an incentive to timely respond to requests for documents." *Kerr*, 184 F.3d at 948.
"Although an 'employer's good faith and the absence of harm are relevant in deciding
whether to award a statutory penalty,' *Chesnut v. Montgomery*, 307 F.3d 698, 704 (8th
Cir. 2002), 'neither [a defendant's] good faith nor the absence of actual injury to [the
plaintiff] precludes the award of a statutory penalty. *Id.* at 703.'" *Brown*, 341 F.3d at
825. Similarly, while courts have "generally looked at the prejudice to the plaintiff and
the nature of the plan administrator's conduct," the Eighth Circuit Court of Appeals has
cautioned "the 'prejudice is not a prerequisite to an award of civil penalties.'" *Kerr*, 184
F.3d at 948 (quoting *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993)).

The court finds that the Insurer and Briar Cliff are also entitled to summary judgment on Baxter's claim that she did not receive all Plan documents. The court found, above, that as a matter of law, "the policy and the Summary Plan Description jointly constitute the Plan documents." *Ross*, 285 F.3d at 739. The record also shows, beyond dispute, that Baxter received these documents from either the Insurer or Briar Cliff, at least once, if not more times, as early as 2001, and that she attached them to her Complaint in this action. Thus, Baxter received all of the documents that "establish or govern the plan." *See Brown*, 190 F.3d at 861.

Moreover, Baxter has failed to generate a genuine issue of material fact that there are some other documents that "establish or govern the plan," *Brown*, 190 F.3d at 861, notwithstanding her contentions that the documents she has received do not contain the authorization to reduce her benefits at issue here and do not contain any administrative appeals provision matching the time limits for resolution of administrative appeals identified in correspondence from the Insurer. First, the court found above that the policy does provide the authority for the reduction in benefits that Baxter is challenging, so that no other policy is somehow hiding in the bushes. Second, there is no reasonable inference that there are documents concerning appeal procedures that are missing. Baxter is correct that the Summary Plan Description provided to her by the Insurer and/or Briar Cliff in 2000 or 2001 states that "[t]he full and fair review will be held and a decision rendered by the insurance company no longer than 60 days after receipt of the request for review," and that "[i]f there are special circumstances, the decision will be made as soon as possible, but not later than 120 days after receipt of the request for review," *see* Baxter's Appendix, Exhibit 2, while the November 29, 2004, letter from the Insurer's "Appeals Unit," which acknowledged receipt of Baxter's administrative appeal, stated that "[t]he Appeals Unit will issue a ruling within 45 days of receipt of your appeal," with a possibility under

ERISA regulations of "an additional 45 days to reach a decision if necessary." Insurer's Appendix (Administrative Record) at 68. Nevertheless, the difference in the time frames for resolution of administrative appeals between the Insurer's correspondence and the Summary Plan Description does not reasonably suggest that the Insurer has failed to disclose a Plan document. Rather, the Department of Labor established regulations for claims filed under ERISA disability plans on or after January 1, 2002, that require resolution of an administrative appeal within 45 days, with a possibility of an additional 45 days. *See* 29 C.F.R. § 2560.503-1(i)(3). Thus, the Insurer notified Baxter of the time for resolution of her appeal, in 2005, pursuant to the shorter time period imposed by the regulation, and then applicable, rather than the longer time that was permitted when the Summary Plan Description was first provided.[3]

Baxter's claim appears to be based on her assertion that she did not receive the Plan documents *again* when she requested them in letters dated December 5, 2004, and December 13, 2004. *See* Complaint, ¶ 15 & Exhibits 6-7. In their Answers, the defendants deny that they failed to respond to these requests, but even assuming that there was a technical violation of § 1024(b), because the defendants did not respond to Baxter's December 2004 requests for Plan documents, the court finds it inappropriate to impose a civil penalty under the circumstances presented here. Although not necessarily dispositive, it is instructive that Baxter has not shown nor has she generated any genuine issue of material fact that she has been prejudiced by a delay or failure of the defendants to provide Plan documents, pursuant to one or another of her requests, when she does not dispute that she received the Plan documents in 2000 and 2001, she certainly had them at the time that

---

[3]Moreover, Baxter does not assert a claim based on untimely disposition of her administrative appeal, which was in fact completed within the time frame authorized by the regulation.

she filed her Complaint in this action, and she has not asserted or shown that any untimeliness inhibited her ability to pursue any administrative appeal or to file or litigate this lawsuit. *Kerr*, 184 F.3d at 948 (although courts have generally looked at whether the plaintiff was prejudiced to determine whether or not to impose civil penalties under ERISA, prejudice is not a prerequisite to an award of such penalties); *accord Brown*, 341 F.3d at 825 (absence of actual injury to the plaintiff does not preclude the award of a statutory penalty, but the absence of actual injury is relevant). Also, while not dispositive, it is instructive that Baxter cannot show nor has she generated any genuine issue of material fact that the defendants failed to act in good faith, where they reasonably believed that they had already provided Baxter with the documents and that no other documents were relevant to her request. *Brown*, 341 F.3d at 825 (a defendant's good faith does not preclude the award of a statutory penalty, although it is relevant). Under the circumstances, the court finds that the purpose of the "penalty" provision of ERISA, "to provide plan administrators with an incentive to timely respond to requests for documents," *Kerr*, 184 F.3d at 948, would not be furthered by the imposition of penalties in this case.

Therefore, the court will grant the defendants' motion for summary judgment on Baxter's claim for failure to provide Plan documents and deny Baxter's cross-motion for summary judgment on the same claim.

### III.  CONCLUSION

Upon the foregoing,

1.      The Insurer's July 15, 2005, Motion For Summary Judgment (docket no. 10), joined in by Briar Cliff and the Plan on July 22, 2005 (docket no. 13), is **granted**;

2.      The separate Motion For Summary Judgment filed by Briar Cliff and the Plan on July 22, 2005, is also **granted**;

3.      Baxter's August 30, 2005, Motion For Summary Judgment (docket no. 31) is **denied**;

4.      The Insurer's August 15, 2005, Combined Motion To Strike (docket no. 25) is **denied as moot**.

**Judgment shall enter in favor of the defendants on all of the plaintiff's claims**.

**IT IS SO ORDERED.**

**DATED** this 18th day of January, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA